UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DEONDRA MARKEITH KEEL-HAYWOOD,

        Plaintiff,

v.

UNKNOWN TOOGOOD, et al.,

        Defendants.
_____/

Case No. 1:24-cv-303

Honorable Phillip J. Green

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g., Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

2

28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Salinas and Cassel. The Court will also dismiss, for failure to

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

state a claim, the following claims against remaining Defendant Toogood: official capacity claims, First Amendment retaliation claim regarding the initial confiscation of Plaintiff's paperwork following the search of Plaintiff's cell, access to the courts claim, and Fourteenth Amendment due process claim. Plaintiff's First Amendment retaliation claim against Defendant Toogood in Toogood's individual capacity regarding the loss of Plaintiff's paperwork will remain in the case.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following ICF personnel in their individual and official capacities: Correctional Officer Unknown Toogood; and Inspectors Unknown Salinas and Unknown Cassel. (Compl., ECF No. 1, PageID.5, 6.)

In Plaintiff's complaint, he alleges that on November 1, 2023, Defendant Toogood conducted a round in Plaintiff's unit. (*Id.*, PageID.7.) Defendant Toogood stopped at Plaintiff's cell, and stated: "What's going on in here, looks like you got papers everywhere; clean up before yard."[2] (*Id.*) Later that same day, Plaintiff's cell was searched while he was out on the yard. (*Id.*) Plaintiff alleges that as a result of the cell search, "legal work from Michigan State Courts w[as] taken, [as well as legal

---

[2] In this opinion, the Court corrects the spelling, punctuation, and capitalization in quotations from Plaintiff's filings.

4

paperwork] from Plaintiff's lawyer . . . , court and trial transcripts, and witness affidavits concerning Plaintiff's charge and case." (*Id.*)

When Plaintiff "discover[ed] [his] legal [paperwork] was missing," he informed Defendant Toogood. (*Id.*) In response, Defendant Toogood stated, "Well if it's missing, I took it," and then Toogood walked off. (*Id.*) Defendant Toogood issued Plaintiff a contraband removal form "for taking all of Plaintiff's legal work mentioned herein." (*Id.*, PageID.8.) Plaintiff states that the contraband removal form indicated that Defendant Toogood had "turned over" the confiscated paperwork to Defendant Salinas. (*Id.*, PageID.9; *see* ECF No. 1-2, PageID.23.)

At some point on November 1, 2023, Plaintiff "told [Defendant] Toogood [that Plaintiff was] asking for [his] legal work back, . . . [and] if [Toogood did not] bring [Plaintiff his] legal work, [Plaintiff was] gonna write a grievance on [Toogood]." (Compl., ECF No. 1, PageID.7.) In response, Defendant Toogood stated: "Well if that's the case, you may never see that paperwork again." (*Id.*)

Two days later, on November 3, 2023, Plaintiff spoke with non-party Prison Counselor Simon, and Simon told Plaintiff that he would look into the matter. (*Id.*, PageID.8.) Subsequently, on November 5, 2023, Plaintiff spoke with an unidentified second shift sergeant about the matter, and Plaintiff spoke with non-party Resident Unit Manager Oversmith the following day. (*Id.*) Non-party Resident Unit Manager Oversmith told Plaintiff there was "nothing [she could] do," and to "write a grievance." (*Id.*)

5

On December 6, 2023, non-party Assistant Deputy Warden Dunigan completed an investigation into the matter, and non-party Deputy Warden Bonn signed off on the report. (*Id.*, PageID.9.) In the report, Defendant Toogood stated that he had given the legal paperwork to Defendant Salinas, and Defendant Salinas stated that neither she nor Defendant Cassel had received the legal paperwork. (*Id.*) Subsequently, on December 27, 2023, Plaintiff "filed a personal property losses claim for all missing legal work taken from his cell by [Defendant] Toogood." (*Id.*, PageID.10.)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his First Amendment right to be free from retaliation and his right to access the courts under the First and Fourteenth Amendments. (*Id.*, PageID.11–12.) Additionally, the Court construes Plaintiff's complaint to raise a Fourteenth Amendment due process claim. Plaintiff seeks compensatory and punitive damages, as well as injunctive and declaratory relief. (*Id.*, PageID.12.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

6

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities. (Compl., ECF No. 1, PageID.5.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See*

*Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks injunctive and declaratory relief, as well as monetary damages. (Compl., ECF No. 1, PageID.12.) An official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123,

159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyons*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495–96.

In the present action, Plaintiff does not allege the existence of an official policy or practice, or suggest that the activities alleged in the complaint are likely to occur to him again. Instead, Plaintiff's allegations relate solely to past harm, not future

9

risk of harm. Therefore, Plaintiff does not seek relief properly characterized as prospective. *See Ladd*, 971 F.3d at 581.

Accordingly, for the reasons set forth above, Plaintiff's official capacity claims against Defendants will be dismissed.

### B. Defendants Salinas and Cassel

Plaintiff's only allegations against Defendants Salinas and Cassel are as follows: that in Defendant Toogood's contraband removal form, Toogood indicated that he had "turned over" the confiscated paperwork to Defendant Salinas; and that in non-party Assistant Deputy Warden Dunigan's report about the matter, Dunigan indicated that Defendant Toogood stated that he had given the legal paperwork to Defendant Salinas, and Defendant Salinas stated that neither she nor Defendant Cassel had received the legal paperwork. (Compl., ECF No. 1, PageID.9.)

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. And, a claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Here, Plaintiff's allegations suggest that the only action taken by Defendants Salinas and Cassel was that they said they did not receive the confiscated paperwork from Defendant Toogood. This is insufficient to show that Defendants Salinas and Cassel engaged in any active behavior, let alone active unconstitutional behavior. And, regardless, Plaintiff claims that, at most, Defendants Salinas and Cassel acted "careless[ly]" by "allow[ing] the

10

legal work to go missing," which suggests they acted negligently; however, negligent action does not support a claim under § 1983. (Compl., ECF No. 1, PageID.11.)

Accordingly, for these reasons, Plaintiff fails to state any claim upon which relief may be granted against Defendants Salinas and Cassel.

### C. First Amendment Retaliation Claims

Plaintiff claims that Defendant Toogood violated his First Amendment right to be free from retaliation as related to Toogood's confiscation of the paperwork from Plaintiff's cell and the subsequent loss of the confiscated paperwork. (*See, e.g.*, Compl., ECF No. 1, PageID.11.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, to the extent that Plaintiff seeks to bring a retaliation claim regarding the initial confiscation of the paperwork in his cell, which included legal paperwork, Plaintiff's retaliation claim fails at the first step because he fails to allege any facts

11

showing that he engaged in protected conduct prior to the confiscation of the paperwork. Instead, Defendant Toogood confiscated the paperwork in Plaintiff's cell *prior to* Plaintiff engaging in any protected conduct. (*See* Compl., ECF No. 1, PageID.7.) *After* Defendant Toogood confiscated the paperwork, Plaintiff told Toogood that Plaintiff would write a grievance about the matter "if Toogood [did not] bring [Plaintiff his] legal work." (*Id.*) In response, Defendant Toogood stated: "Well if that's the case, you may never see that paperwork again." (*Id.*) Thereafter, Plaintiff claims that the paperwork in question went missing.

At this stage of the proceedings, the Court must take Plaintiff's allegations as true and in the light most favorable to Plaintiff. Therefore, although Plaintiff's claim lacks specificity as to Defendant Toogood's involvement in the loss of the paperwork, the Court will not dismiss Plaintiff's First Amendment retaliation claim against Defendant Toogood in Toogood's individual capacity regarding the loss of Plaintiff's paperwork. *Cf. Bell v. Johnson*, 308 F.3d 594, (6th Cir. 2002) (discussing that, in the context of a First Amendment retaliation claim, there is "no basis for concluding that prisoners should be required to tolerate the theft of their property, including legal documents and medical dietary supplements, as the price of petitioning the courts" (citation omitted)). Plaintiff's First Amendment retaliation claim against Defendant Toogood regarding the initial confiscation of the paperwork following the search of Plaintiff's cell will be dismissed.

### D. Access to the Courts Claim

Plaintiff claims that the confiscation of the paperwork from his cell, which included legal paperwork, interfered with his right to access the courts. (Compl., ECF No. 1, PageID.10–11.)

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824–28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and show that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently

13

hindering, his efforts to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The United States Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.*

14

Here, Plaintiff alleges that "legal work from Michigan State Courts w[as] taken, [as well as legal paperwork] from Plaintiff's lawyer . . . , court and trial transcripts, and witness affidavits concerning Plaintiff's charge and case." (Compl., ECF No. 1, PageID.7.) Plaintiff also references working on an unspecified "appeal." (*Id.*) Although Plaintiff references the "Michigan State Courts," his "charge and case," and an "appeal," in his complaint, Plaintiff does not specify the specific type of underlying action that he was pursuing. However, in Plaintiff's grievances, which he attached to his complaint, Plaintiff references pursuing an appeal in his criminal case. (*See, e.g.*, ECF No. 1-1, PageID.18, 19.) Regardless, even assuming Plaintiff has identified an underlying cause of action for which he may bring an access to the courts claim, Plaintiff fails to allege any facts showing that the loss of his paperwork resulted in any lost remedy in the underlying action. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) ("Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004))).

Because Plaintiff has failed to show any lost remedy, he has failed to state a claim for denial of access to the courts. Accordingly, for the reasons set forth above, Plaintiff's access to the courts claim will be dismissed.

> **E. Fourteenth Amendment Due Process Claim Regarding the Deprivation of Property**

To the extent Plaintiff claims that by losing his paperwork, he was deprived of his property without due process of law, this claim is barred by the doctrine of *Parratt*

15

*v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112, ¶ B (eff. Oct. 2, 2023); MDOC Policy Directive 04.02.110, ¶ E (eff. Nov. 1, 2017). Moreover, aggrieved prisoners may submit claims for property loss of less than $1,000.00 to the State Administrative Board. Mich. Comp. Laws. § 600.6419; MDOC Policy Directive 03.02.131 (eff. Mar. 27, 2017). Finally, Michigan law authorizes

16

actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

Accordingly, Plaintiff fails to state a Fourteenth Amendment due process claim regarding the deprivation of his property.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendants Salinas and Cassel will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Toogood: official capacity claims, First Amendment retaliation claim regarding the initial confiscation of Plaintiff's paperwork following the search of Plaintiff's cell, access to the courts claim, and Fourteenth Amendment due process claim. Plaintiff's First Amendment retaliation claim against Defendant Toogood in Toogood's individual capacity regarding the loss of Plaintiff's paperwork remains in the case.

An order consistent with this opinion will be entered.


Dated: June 18, 2024                         /s/ Phillip J. Green
                                             PHILLIP J. GREEN
                                             United States Magistrate Judge